THOMAS *v.* SYPERT.

Opinion delivered January 18, 1896.

61   575
75   188

61   575
81   284

TRUST—PURCHASE BY ADMINISTRATOR OF DECEDENT'S LANDS.—Where an administrator purchased land of his decedent's estate at a commissioner's sale, he will be held a trustee in favor of decedent's minor heir, toward whom he stood *in loco parentis* by reason of his marriage to the latter's mother, and of his receiving the latter into his family.

LACHES—ENFORCEMENT OF TRUST.—Delay on the part of an heir for the period of 15 years after attaining his majority before suing to set aside a purchase of his ancestor's land by the administrator will bar relief where the administrator during that time was openly and continuously in adverse possession, within the knowledge of the heir.

Appeal from Howard Circuit Court in Chancery.

JOHN H. CRAWFORD, Special Judge.

James Y. Thomas brought suit in equity against R. T. Sypert and others to quiet title to certain land. From a judgment dismissing the complaint, plaintiff has appealed.

The facts in this case are stated in the opinion of the circuit court, which is as follows:

"Francis M. Thomas died in 1863, seized and possessed of an undivided two-thirds interest in the lands in controversy in this action. By his last will he devised said lands to Lydia R. Thomas, his wife, and to James Y. Thomas, the plaintiff, his son, in joint tenancy. The remaining one-third interest in said lands belonged to Wm. C. Sypert, who, in 1865, married the said Lydia R. Thomas, and in 1866 was, by the probate court of Hempstead county, Arkansas, duly appointed as administrator *de bonis non* with the will annexed of the estate of the Francis M. Thomas, deceased, and he duly qualified and acted as such, until he died,—at any rate he never made any final settlement, and was never finally discharged, so far as the probate records show.

The lands sued for, or a part of them, were at the time of the death of the said Francis M. Thomas, occupied by him as a homestead, and after his death continued to be occupied by his family, up to the time of the marriage of his widow to the said Wm. C. Sypert, and after that time were occupied by the family of Wm. C. Sypert as a homestead until his death, which occurred in 1891. From the time of the marriage of the plaintiff's mother, until about 1877, the plaintiff lived with his mother and step-father, as a member of the family, and was treated in all respects as one of their own children. The defendants to this action are the children and grandchildren of the said Wm. C. and Lydia R. Sypert, except the Central Fair Association, which is a corporation. At the time of the death of the said Francis M. Thomas, the lands in controversy were situated in Hempstead county, Arkansas. Since the formation of Howard county, in 1873, they have been in that county.

"In 1872, in a cause then pending in chancery in the circuit court of Hempstead county, wherein the said Wm. C. Sypert, *in propria persona*, and as administrator of Francis M. Thomas, deceased, with the will annexed, and Lydia R. Sypert, were plaintiffs, and the plaintiff in this action (then a minor), by his guardian *ad litem*, and others were defendants, it was ordered and decreed by said court that the interest of the estate of the said Francis M. Thomas, deceased, in and to the lands in controversy in this action, be sold for partition, and to pay the debts of said estate, and Simon T. Sanders was appointed as a commissioner to sell, not only the interest of said estate, but also the interest of said Wm. C. Sypert in said lands. At the sale, under and by virtue of said decree, the said Wm. C. Sypert became the purchaser, and in 1873 the said sale was confirmed by the circuit court, and a deed was properly executed, delivered and recorded. After his purchase, the said Wm. C. Sypert treated the lands in controversy in all respects as his own, paying taxes, making improvements, and executing sales, openly and above board, and, in other words, holding the same adversely to all the world. On the 3d day of December, 1890, he sold a portion of the said lands to the Central Fair Association, executing a warranty deed therefor, and holding a vendor's lien for the purchase money, a part of which remains still unpaid. The other defendants claim an interest in the said lands by deed from said Wm. C. Sypert. Some of them are minors, and defend here by guardian *ad litem*. It is conceded that none of the defendants have held any of said lands long enough to have title by adverse possession, unless their possession can be tacked to that of Wm. C. Sypert. In other words, the statute must have been set in motion in favor of said Wm. C. Sypert. Wm.

C. Sypert died in 1891, and Lydia R. Sypert in 1875, about 18 years before the beginning of this suit.

"First. The first question presented arises on the intervention of certain probate judgment creditors of said Francis M. Thomas, deceased, who have been granted leave to intervene in this cause. They maintain their right to subject the land in controversy to the payment of their probated claims. Have they exercised such diligence as will now entitle them to insist upon such relief? Lands in the hands of an administrator are assets only for the payment of debts. Before they can be sold, the personal property must first be exhausted. (Mansfield's Digest, secs. 170, 171.) It seems to be admitted that there was a large amount of probated debts against said estate, and that a considerable part of it, at least, was compromised and paid off by said Wm. C. Sypert at from 10 to 25 cents on the dollar. The creditors whose claims remained unsettled should have required the administrator to account for the personal property that should have been in his hands. They then might have proceeded against the landed interest of the estate. They claim that they are not barred by limitation or laches for the reason that the lands in controversy were, at the death of said Francis M. Thomas, deceased, his homestead, and afterwards the homestead of his family; that, upon the marriage of his widow to the said Wm. C. Sypert, who himself owned the remaining one-third interest in said lands, thereafter his (Sypert's) homestead interest was impressed, not only upon his one-third interest, but upon the entire interest in said land, including the two-thirds interest in said land in controversy, and that the same was not subject to sale for the payment of the debts of the estate of said Francis M. Thomas, deceased, until after the death of the said Wm. C. Sypert. The act of 1852 (Gould's Digest p. 504, secs. 29, 30)

governs the homestead rights of the family of said Francis M. Thomas, deceased. That act exempted the homestead from sale, not exceeding 160 acres, "during the time it shall be occupied by the widow, or child or children of any deceased person," who was then living, entitled to the benefits of that act. See *Johnston* v. *Turner*, 29 Ark. 280–281.

"I hold that the words 'child or children' in said act should be construed to mean 'minor child or minor children.' It is not very clear, from the evidence, how many acres the two-thirds interest of the Francis M. Thomas estate covered at the time of his death. It must, however, have been some 400 or 500 acres. The excess over 160 acres could clearly have been sold to pay the debts of the said estate over a quarter of a century ago. The homestead rights as to all of the lands terminated on the death of the widow and the majority of the plaintiff, both of which events occurred over fifteen years before this action was commenced. All of the said lands then were subject to sale to pay the debts of said estate. The interest in said lands belonging to the estate of said Francis M. Thomas, deceased, could not in any case be held by said Wm. C. Sypert as a homestead against the claims of the creditors of said estate. It was held in *Mays* v. *Rodgers*, 37 Ark. 155 (quoting the syllabus), "that a delay for ten years after the grant of administration, without showing any hindrance or proper cause for it, is unreasonable, and discharges the lien upon the real estate." See, also, *Stewart* v. *Smiley*, 46 Ark. 373; *Graves* v. *Pinchback*, 47 Ark. 470.

"In my opinion no sufficient excuse for the delay is shown to exist in this case, and the rights of the interveners are consequently barred by the lapse of time.

"2. The next question involves the right of the plaintiff, under the evidence in this case, to recover. I hold that Wm. C. Sypert, having married the plaintiff's

mother, administered upon his father's estate, and received the plaintiff into his family as one of his own children (he then being a minor of tender years), stood, as to him, *in loco parentis. Hindman* v. *O' Connor*, 54 Ark. 627, 639 ; *Gillespie* v. *Holland*, 40 Ark. 28, 32 ; *Million* v. *Taylor*, 38 Ark. 428. He was a trustee, and not permitted to traffic and speculate in his step-son's patrimony. He was, by law, forbidden to purchase property, and hold it for his own benefit, where he had a duty to perform to the owner of said property which was inconsistent with the character of a purchaser on his own account, and for his own use. *Imboden* v. *Hunter*, 23 Ark. 622, 626 ; *Mock* v. *Pleasants*, 34 Ark. 63, 72 ; *McNeil* v. *Gates*, 41 Ark. 264, 269 ; *Culberhouse* v. *Shirey*, 42 Ark. 28 ; *Graves* v. *Pinchback*, 47 Ark. 470 ; *Woodard* v. *Jaggers*, 48 Ark. 248 ; *Clements* v. *Cates*, 49 Ark. 242, 245 ; *Gibson* v. *Herriott*, 55 Ark. 85, 91. And this is true, regardless of the good faith of the transaction. *Imboden* v. *Hunter*, 23 Ark. 622 ; *McGaughey* v. *Brown*, 46 Ark. 25 ; *Hindman* v. *O' Connor*, 54 Ark. 627 ; *Gibson* v. *Herriott*, 55 Ark. 85, 91. The fact that Wm. C. Sypert bought from the commissioner, under a decree of court in a case brought by himself, will not make his attitude different from that of any other trustee purchasing property, towards the owner of which he stands *in loco parentis*. See *Marchbanks* v. *Banks*, 44 Ark. 54. I hold that this sale of Wm. C. Sypert was voidable, not void. *Town of Searcy* v. *Yarnell*, 47 Ark. 269 ; *Jones* v. *Ark. etc. Co.* 38 Ark. 17.

"Did the statute of limitations run against the plaintiff's cause of action prior to the commencement of this suit? It is a general rule that the statute will not run against the trustee of an express trust. There is, however, an exception to that rule, equally as well established as the rule itself, that where the trustee openly renounces his trust, and holds the trust property notori-

ously and adversely against the *cestui que trust* and all the world, and does so without successful fraud and concealment, and the beneficiary in the trust is *sui juris*, and in possession of facts sufficient to put him upon inquiry as to his rights, then the law will presume that he has full knowledge of all facts that proper inquiry would disclose affecting his interests, and from that time the statute will run against his right of action. "Actual notice of the facts upon which an action may be sustained is not necssary to put the statute in motion," as was held in the late case of *Bland* v. *Fleeman*, 58 Ark. 84. As was said by the United State circuit court of appeals for the eighth circuit, in the case of *Percy* v. *Cockrill*, in the 53 Fed. Rep. 872, 875, "Notice of facts and circumstances which would put a man of ordinary intelligence and prudence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. Where a person has sufficient information to lead him to a fact, he shall be deemed conversant with it." Plaintiff testified that he lived with Wm. C. Sypert from the time he was eight years old until his (plaintiff's) marriage in 1877 ; that he knew nothing of any sale or anything else about his father's estate until about that time. He was then informed by said Wm. C. Sypert that his father's estate was insolvent, and did not pay 25 cents on the dollar, and had been sold and purchased by him (Sypert). Plaintiff states further that he had heard people say that the land around Nashville was once known as the "Thomas Place," but he did not know what title his father held, the amount, nor the numbers, nor anything else about it. He did not state when he heard these rumors. We are therefore left to presume

that he heard them all along, from the time he reached his majority. This information shows plaintiff to have been in possession of facts with reference to his father's estate sufficient to have put him upon inquiry. The will was regularly probated, and was a public record. His ignorance of its existence amounts to nothing. He was an only child. If his father died intestate, he was the heir to all that he possessed. After the payment of his debts, his position was just as strong without the will as with it. It was held in *Gibson* v. *Herriott*, 55 Ark. 85, 92, that, 'while a purchase by a trustee may be avoided, it may be cured by unreasonable and unexplained delay after the heirs became of age. Courts of equity have always discouraged laches and delay. The door of equity cannot forever remain open.'

"The fact that the administration on the estate of Francis M. Thomas, deceased, remained unclosed in the hands of the said Wm. C. Sypert will not necessarily suspend the operation of the statute of limitations in plaintiff's favor. It seems that each particular case must stand or fall upon its own facts. In the case of *Bland* v. *Fleeman*, already cited, our supreme court say: "The fact that the administration had not been closed was no impediment to the plaintiff's right of action. We can see no reason why they (the heirs) could not, and should not, have sued before as well as after the settlement and discharge of the administrator, unless it be that they were not apprised of the facts, which rendered the sale and purchase by Fleeman invalid."

"I hold that the commissioner's deed to said Wm. C. Sypert was color of title, showing the hostile character of his holding, and would in time ripen into a perfect title. It was 'a deed which upon its face shows treason to the lord of the fee.' It was a proclamation to all the world, as from the housetops, that Wm. C. Sypert claimed to own in his own right the land described in

his deed. The plaintiff reached his majority June 4, 1878, and the statute of limitation would then commence to run against his right to recover the land, unless the concealment of his trustee, and his want of knowledge of his rights, were sufficient to suspend its operation. I am unable so to find. The plaintiff's complaint will be dismissed at his costs."

*Tompkins & Greeson* and *D. B. Sain*, for appellant.

1. By his purchase at his own sale, the administrator became a trustee. Such sales are against public policy. 4 How. 599; 23 Ark. 623; 46 *id.* 25; 34 *id.* 72; 55 *id.* 91; 38 *id.* 17; 33 *id.* 587; 30 *id.* 44; 27 *id.* 643; 54 *id.* 539. The rule applies to partition sales. 49 Ark. 242; 57 Ill. 389; 41 *id.* 269. And to sales made under decree of court. Bigelow on Fraud, p. 244; Story, Eq. (12 ed.), secs. 321, 323. It is not necessary to show fraud or concealment, in order to avoid the sale, except in so far as it may affect the question of laches. 55 Ark. 92; 33 *id.* 802.

2. An administrator is the trustee of an express trust, and, until he closes the administration, or. renounces the trust, the statute of limitations does not run. 28 Ark. 20; 46 *id.* 45; 48 *id.* 248. If *Bland* v. *Fleeman*, 58 Ark. 84, correctly states the law, the judgment in this case should be reversed, for here *actual* fraud and concealment are shown. No time bars a direct trust between trustee and *cestui que trust.* 3 Johns. Ch. 216; 130 U. S. 505. When relief is asked upon the ground of actual fraud, especially if such fraud has been concealed, time will not run in favor of defendant until the discovery of the fraud. 120 U. S. 136; Wait, Fr. Conv. secs. 290–1; 21 Wall. 349; 15 Blatch. 541. If the fraud is concealed, the statute will not run. 46 Ark. 35; 20 Johns. N. Y. 33; 2 Munf. Va. 511; 1 Mills, (S. C. Law), 296; 4 Humph. (Tenn.),

212; 15 Blatch. 541.   Where the party remains in igno-
rance of the fraud, without any fault or want of dili-
gence or care on his part, the statute does not run until
the fraud is discovered, though there be no special cir-
cumstances or efforts on the part of the party commit-
ting the fraud to conceal it from the knowledge of the
other party.   120 U. S. 130; *Ib.* 684.   Where there is a
relationship of confidence between the parties, the party
relying upon adverse possession or the statute of limi-
tation must show that the *cestui que trust had notice of
all the facts.   It is the trustee's duty to disclose fully.*
118 Mass. 153; 8 Watts, 12; 28 Miss. 597; 1 Bigelow,
Fraud, 27 to 31 and 321–3; 20 N. H. 187; 11 Oh. St.
194; 89 Am. Dec. 274; 18 Ark. 507.   Thomas must not
only have known the facts, but how a court of equity
would deal with them.   1 Bigelow, Fraud, 322; Perry,
Trusts, 851; 4 Lawson, Rem. sec. 2036.   Where parties
occupy a relation of trust and confidence, and the cir-
cumstances show that one has reaped undue advantage,
it is fraudulent.   30 N. Y. S. R. 478; 1 Rice, Civ. Ev.
p. 140.

3.   The record of the deed to Sypert was not notice
to Thomas.   26 Wis. 614; 14 Am. St. 235; 28 Kas.
298; 55 Ark. 104; 74 Ala. 546.

4.   The possession by Sypert was lawful, not ad-
verse.   18 Ark. 507; 9 Am. St. 528.

5.   The defendants being volunteers no question of
*bona fide* purchasers arises.   38 Ark. 26; Bigelow,
Fraud, p. 401; 7 Johns. Chy. 65; 44 Ark. 53; 3 *id.*
104.   The Fair Association had not paid the purchase
money, and took with notice of the trust.   Devlin on
Deeds, sec. 1000; 87 Mich. 140; 303 Mo. 414; 29 Ark.
650; 50 *id.* 322; 2 Pom. Eq. secs. 627–8.

*W. C. Rodgers*, for appellees.

1. Sypert had an interest in the land, and purchased to save his interest from being sacrificed. The sale was not void. It was merely voidable. 143 U. S. 214 ; 55 Ark. 85 ; 54 *id*. 627 ; 58 *id*. 84 ; 46 *id*. 25, 32 ; 48 *id*. 248, 250. Sypert expressly repudiated the trust in the most effective way known to the law. 46 Ark. 25, 34 ; 50 *id*. 141, 152. Having bought the land, and held possession more than twenty years under his deed, he must be held only a constructive or implied trustee, and trusts arising by operation of law, or constructive trusts, are subject to the operation of the statute. 46 Ark. 25, 35 ; 54 *id*. 627 ; 10 Pet. 177 ; 23 How. 190 ; 58 Ark. 84, 97 ; 23 *id*. 363.

2. Concealment by mere silence is not enough. There must be some trick or connivance intended to exclude suspicion and prevent inquiry to avoid the statute. The party must use diligence to detect the fraud and unearth it, especially where the records proclaim every fact of which he claims to be in ignorance. Thomas is barred by laches. 58 Fed. 470 ; 136 U. S. 392 ; 28 Fed. 275 ; 101 U. S. 129 ; 57 N. W. 1121 ; 70 Iowa, 86 ; 143 U. S. 224 ; 21 Neb. 413 ; 28 *id*. 479 ; 149 U. S. 231 ; 136 U. S. 386 ; 55 N. W. 302 ; 40 Fed. 774 ; 2 Wall. 95 ; 51 Fed. 774 ; 14 *id*. 753 ; 50 Ark. 141 ; 53 Fed. 872 ; 95 U. S. 157 ; 158 *id*. 172. A party cannot be wilfully blind, nor wantonly ignorant, and then reap the fruits of ignorance. 53 Fed. 415, 418. Having notice of facts sufficient to put him on inquiry, he cannot remain in studied ignorance of what inquiry would lead up to. 11 Fed. 563 ; 53 *id*. 415, 521.

3. Creditors might have asserted their rights, if aggrieved, in due time, but not after ten years. 37 Ark. 155 ; 46 *id*. 373–6. For twenty years Thomas was *sui juris*, and after long lapse of time the law presumes a

grant. 120 U. S. 120 ; 50 Ark. 141, 155 ; 21 Wall. 147.

4. It is not necessary that possession, to be adverse, must be rightful. The term implies *hostile* possession. 34 Ark. 534 ; 13 How. 472 ; 50 Ark. 141 ; Tyler, Eject. 863. Sypert held under color of title for more than the full period of limitation. 53 Ark. 547 ; 50 *id.* 141 ; 13 How. 472 ; 20 S. E. 831 ; 34 *id.* 219.

5. Where one co-tenant is in possession of the whole estate, claiming under a deed purporting to convey the entire estate, he will be deemed to have ousted his co-tenants. Freeman Co-ten. sec. 223 ; 119 Ind. 95 ; 104 *id.* 227 ; Wood, Lim. sec. 266 ; 3 How. 974 ; 118 Ill. 459 ; 85 Ky. 155 ; 27 S. W. 190.

6. Courts of equity always discourage laches and delay. 3 Brown, Ch. 640. And after the lapse of years, and the death of the party assaulted, they refuse, for the sake of peace and stability of titles and property, to open up questions long acquiesced in, and enforce a claim which is stale. 46 Ark. 25 ; 7 How. 234 ; 40 Fed. 774 ; 7 *id.* 179 ; 124 U. S. 188 ; 15 Fed. 753 ; 17 Wall. 366 ; 127 U. S. 388 ; 85 Ky. 572 ; 21 Wall. 178 ; 105 U. S. 391 ; 136 *id.* 386 ; 138 *id.* 486 ; 8 How. 231 ; 18 Wall. 509 ; 10 Pet. 248 ; 10 Wheat. 173 ; 102 U. S. 465 ; 19 Ark. 16 ; 8 Utah, 380 ; 41 Mich. 583, and many others.

7. Our statute makes no exception in favor of infants. 6 Ark. 14 ; 16 *id.* 671 ; 104 Ind. 223 ; Wood on Lim. sec. 252 ; 4 Humph. (Tenn.) 312 ; 51 Ark. 453 ; 13 *id.* 291.

As to purchase of decedent's lands by administrator. RIDDICK, J., (after stating the facts). We agree with the circuit court in holding that the right of action of appellant is barred by the statute of limitation and the lapse of time. Wm. C. Sypert, the ancestor of appellees, purchased the land in controversy at a sale ordered by a court for partition, in the year 1873. The sale was duly confirmed, and a deed made in pursuance

thereto. Under this sale and conveyance, Sypert took possession of the lands, and held the same openly, adversely and continuously under a claim of title from the year 1873 till the time ·of his death, in 1891, and this action was not commenced until 1893, twenty years after Sypert took possession of the land. This open, notorious and adverse possession of the land was, in law, notice to all the world of Sypert's possession and claim of ownership, but the appellant had also actual notice of these facts. He also knew that his father had at one time owned or claimed the land, for, when questioned on this point, he said : "I had heard people say that the land around Nashville was once known as the "Thomas Place," but I did not know what title my father held, the amount, or the numbers," etc. Again, referring to this matter, he said : "In my former deposition I said all I knew about the land in controversy being sold was what Wm. C. Sypert told me, just before I was married, that he had bought all the property. I did not know what kind of a sale was made, nor when it was made, nor how the sale was made." This conversation with Sypert, in which he told plaintiff of the purchase, occurred before plaintiff was married, and plaintiff was married before he became of age. The testimony of plaintiff himself, we think, shows that, before he became of age, he knew that the land in controversy had been a portion of his father's estate, and that afterwards it had been purchased by Sypert at a judicial sale of some kind. But, apart from this testimony, it would be strange if appellant, a man of fair intelligence, .who was nearly nine years of age at the time of the marriage of his mother with the ancestor of appellees, and who lived till grown on the land in controversy, in the midst of neighbors and acquaintances, most, if not all, of whom knew, for it was a matter of common knowledge in the neighborhood that the land had been the home-

stead and a part of the estate left by his father,—it would be exceedingly strange if he remained ignorant of that fact till long after he became of age. But if he knew that this land had belonged to the estate of his father, and we think there can be no doubt that he had this knowledge, this was sufficient to put him on an inquiry which, if properly pursued, would have led to the discovery of all the other matters essential to the establishment of his rights. That he did not know the exact nature of his father's title, or the numbers of the land, was a matter of no consequence, for this could have been ascertained from the public records of the county. These records would also have fully informed him of the nature of the title under which Sypert claimed the land. He must have known of these facts before he became of age, and yet, with nothing to prevent him from bringing suit, he waited fifteen years after becoming of age, and until Sypert was dead, before commencing his action.

The evidence impresses us with the belief that this long delay in asserting his rights was occasioned, not by reason of any concealment on the part of Sypert, or from ignorance of the facts on the part of appellant, but that it was due, either to ignorance of the law,—which, according to an old maxim, excuses no one,—or, what is more probable, to the natural repugnance felt by appellant against harassing, by a law suit, the old age of a man who had adopted him as a son, had long stood towards him in the relation of a parent, and in whom, to use his own language, he "had the greatest confidence." While this delay was not discreditable to appellant, attesting as it does a due regard for his adopted father, it was yet fatal to his right to recover.

The defects, whatever they may have been, that existed in the title of appellees are now cured by lapse of time, and covered by the mantle of repose which the

statute places over rights long openly, adversely and peaceably asserted. "The law wisely holds that there shall come a time when even the wrongful possessor shall have peace." *Cunningham* v. *Brumback*, 23 Ark. 338.

The fact that Sypert was the administrator of the estate of appellant's father, and also stood *in loco paren-* *tis* towards appellant, can now avail nothing, after so great a lapse of time; for, by the purchase and adverse possession of the land; Sypert had, so far as it was concerned, openly repudiated the trust. The rule is that "the statute begins to run from the time that the trust is openly repudiated or disclaimed by the trustee." Lawson's Rights & Rem. sec. 2036 ; *Bland* v. *Fleeman*, 58 Ark. 90 ; *Gibson* v. *Herriott*, 55 Ark. 92 ; *Hindman* v. *O'Connor.* 54 Ark. 645 ; *McGaughey* v. *Brown*, 46 Ark. 34 ; *Merriam* v. *Hassam*, 14 Allen, 516 ; S. C. 92 Am. Dec. 795 ; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90 ; S. C. 11 Am. Dec. 172 ; *Wood* v. *Carpenter*, 101 U. S. 139.

The learned special judge who heard this cause in the circuit court having favored us with an opinion correctly stating the facts and the law of the case, we concur in the same, and refer to it for a fuller discussion of the questions arising in this case. For the reasons stated in that opinion, as well for those given above, the judgment of the circuit court is affirmed.

BATTLE, J., took no part in the determination of this cause.

*Margin note:* When enforcement of trust barred by laches.