RHODES *v.* CISSEL.

Opinion delivered April 15, 1907.

1. WATERS—RIGHT TO BED OF LAKE.—A riparian proprietor upon a non-navigable lake is entitled to take to the center thereof ratably with other riparian proprietors; the extent of his interest depending upon his frontage upon the lake.  (Page 370.)

2. ESTOPPEL—BASIS OF.—An estoppel does not arise *in pais* where the party claiming the benefit of the estoppel was not misled by the other or influenced to pursue any particular course of conduct.  (Page 371.)

3. SAME—RIGHTS SUBSEQUENTLY ACQUIRED.—The doctrine of estoppel by representation applies only to rights existing in the party at the

time of making such representation and not to rights subsequently acquired by him. (Page 371.)

4. LACHES—WHEN DOCTRINE APPLIED.—The doctrine of laches is based upon the assumption that the party to whom laches is imputed has knowledge of his rights and opportunity to assert them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless or have been abandoned; and that because of the change of conditions or relations during this delay it would be unjust to the latter to permit him now to assert them. (Page 371.)

Appeal from Mississippi Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

*S. S. Semmes, Charles T. Coleman* and *J. T. Coston,* for appellant.

1. There is no estoppel in this case. None of the elements of estoppel appear. 2 Pomeroy, Eq. Jur. (3 Ed.) § 805; 39 Ark. 131; 38 S. W. 348; 52 *id.* 52; 46 Ill. 252; 11 Humph. 183; 5 *id.* 26; 49 Ark. 225.

2. The trust deed was on a different tract of land. But if on the land it would not work an estoppel. 99 S. W. 83; 34 *id.* 827-8.

3. Where land is bounded by an unnavigable lake or stream, the riparian owner takes to the middle of the stream. 25 Ark. 120.

*G. W. Thomason* and *W. J. Lamb,* for appellee.

Rhodes is estopped. 62 Ark. 316; 3 Washburn, Real Property, pp. 77, 80, 81; 16 Ark. 340; 23 *id.* 704; 33 *id.* 468.

BATTLE, J. This is a contest between appellant and appellee over a tract of unsurveyed land in Mississippi County, in this State, known as "Golden Lake." At the time the surrounding lands were surveyed by the United States, it was a shallow, unnavigable body of water. Its waters have gradually passed away until the greater part of its former bed has become cultivable. A farm, containing as much as 200 acres of land reclaimed from its waters, has been inclosed and cultivated upon what was the bed of the lake. John Cissel is in possession of this farm and other lands in what is known as the lake, claiming them as his own. J. W. Rhodes and many others, owning the

lands surrounding and bordering on this lake, brought an action against him for the possession of the lands in the lake. Cissel answered and denied that plaintiffs were the owners of the lands surrounding and bordering upon the lake; pleaded the seven years' statute of limitation; and alleged that Rhodes and others "induced him to go on the lands and invest large sums of money, and that this appellant agreed with him that all he wanted of Golden Lake was enough to fill out his fractional sections; that appellant advised him that if he would execute a trust deed to him he would have same recorded and would advance him the money for the purpose of improving the land, and that this would strengthen appellee's title; that he did execute the trust deed upon which he borrowed $900, a large part of which he expended in improving the land; that appellant lived within a few miles of the land, knew that this defendant was making large investments thereon, and in the belief that he was the owner, and with the assurance that appellant would never claim the land."

On motion of defendant the action was transferred to the Mississippi Chancery Court for the Osceola District.

The land in controversy is located in what would be section 36 in township 11 north and range 9 east if the lines of the United States survey were extended over the lake. The south fractional half of section 25 in township 11 north and in range 9 east, and the south fractional half of section 30 in township 11 north and in range 10 east border and front on the lake and belong to Rhodes; and section 36 in township 11 north and range 9 east lies south of the south fractional half of section 25. Rhodes acquired the first-mentioned tract on the 6th of May, 1897, and the second on the 7th of February, 1896.

Cissel took possession of the land in controversy in August, 1895. The day when the summons was issued is not shown by the record in this court, but it is shown that it was served on the defendant on the 15th or 16th of April, 1902. Adams, under whom the defendant claims, cleared about sixteen acres of the land in controversy more than seven years before the commencement of this action. But Adams followed fishing as an occupation, raised a few hogs, had no claim or color of title to the land; and the evidence does not show that his possession

was continuous or hostile to the true owner. In fact, the land, until Cissel took possession, was regarded and treated as public land.

Cissel testified that, before he moved on to the land, in August, 1895, he said to Rhodes that he was going to move to "Golden Lake," and said to him: "I want you to send and get me seven or eight miles of smooth wire." And he says, "What are you going to do with it?" And I said, "I'm going to run it around the lake. I have a letter from the Secretary of the Interior, and (he says) that land doesn't belong to any body; and I am going to put a fence around it, and that will show to the world that that's my land." And he (Rhodes) says: "That's a little risky, and I don't believe I would do that." And I says: "Land is getting so high I have got to do something." That Rhodes consented to his moving on the land; and furnished him with money to make improvements, and took a mortgage on the land to secure the loan, which was $900. This was in the spring of 1898 or 1899. That Rhodes advised him to mortgage the land to him, saying that he would have it recorded, and that would improve his title.

Rhodes testified that he did not consent to his going on the land, and did not think that he had the right to object, but told him "he was a fool to do so;" and "that it was just a question of time until some body would take it away from him;" that he furnished him with various sums of money, but for no special purpose or understanding. He further testified in effect that he did not know what his right to the land was, and "told Cissel a half dozen times, that he intended to have everything that belonged to him (Rhodes) in Golden Lake." He denied that he took a mortgage on the land, and the mortgage shows that it was not taken on this land, but on land in a different township.

As to section 36 the court found in favor of Cissel, and Rhodes appealed.

Rhodes was entitled to take to the center of the "Golden Lake," ratably with other riparian proprietors. The extent of his interest depends upon his frontage upon the lake. *Hardin v. Jordan,* 140 U. S. 371; *Scheifert v. Briegel,* (Minn.) 96 N.

W. Rep. 44; *Grand Rapids Ice & Coal Co.* v. *South Grand Rapids Ice & Coal Co.,* 25 L. R. A. 815; 3 Farnham on Waters and Water Rights, § 843, and cases cited. As to the manner in which this interest should be set apart, see the authorities cited.

Cissel did not hold the land in controversy, seven years adversely before the commencement of this suit, and the plaintiffs were not barred from maintaining it.

Rhodes was not estopped from claiming and suing for the land. He did not mislead Cissel or influence him in taking the course he did. Cissel well knew that Rhodes did not know or have information that he had any interest in the land. Before Rhodes knew that he intended to take possession of the land he (Cissel) had already determined on his course. He said to Rhodes, in explanation of his conduct: "I have a letter from the Secretary of the Interior, and he said that it doesn't belong to any body, and I am going to put a fence around it, and that will show to the world that that's my land." Rhodes advised him not to do so, and told him he had no title to it; that it was just a question of time until somebody would take it away from him, and told him a half dozen times that he intended to have everything that belonged to him in "Golden Lake." This is not denied by Cissel. He was not misled or influenced by Rhodes to take any course of conduct, and Rhodes is not estopped. 2 Pomeroy's Eq. Jur. (3rd Ed.) § 805, and cases cited; *Bramble* v. *Kingsbury,* 39 Ark. 131.

Cissel says the conversation with Rhodes, which is relied on as an estoppel, occurred in August, 1895, prior to the time when he (Rhodes) acquired land bordering on the lake. Rhodes was not estopped from setting up any interest he did not have at the time of the conversation. *McLain* v. *Buliner,* 49 Ark. 225.

For the same reason Rhodes was not barred by laches from maintaining his suit. In *Galliher* v. *Cadwell,* 145 U. S. 368, the court said: "The cases are many in which this defence (laches) has been invoked and considered. It is true that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is im-

puted has knowledge of his rights and an ample opportunity to assert them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless or have been abandoned; and that because of the change in conditions or relations during this period of delay it would be an injustice to the latter to permit him to now assert them." In this case Cissel knew, or had reason to believe, that Rhodes was ignorant of his right to the land, and had no good reason to believe that his rights were worthless or had been abandoned.

The decree of the court is reversed as to Rhodes, and the cause is remanded with directions to the court to enter a decree in accordance with this opinion. .