## FINLEY *v.* FINLEY.

### Opinion delivered March 25, 1912.

EQUITY—LACHES.—Equity will deny relief to a party complaining that a deed was procured from him by duress where he waited five years, and until the principal witness for the defendants has died, before bringing his suit to cancel the deed.

Appeal from Hempstead Chancery Court; *James D. Shaver*, Chancellor; affirmed.

*Thos. C. McRae, W. V. Tompkins* and *D. S. McRae*, for appellant.

1. The deed was void for fraud, and the burden was on appellee to show its absence. 40 Ark. 393; 9 Ves. 291; Pom. Eq. Jur. §§ 951, 958; 46 Ark. 25; 74 *Id.* 231; 73 *Id.* 575; 54 *Id.* 627; 40 *Id.* 393; 96 *Id.* 281; etc.

2. There was no laches, and the statute of limitations never commenced to run.

*James H. McCollum* and *O. A. Graves*, for appellee.

1. No undue influence or fraud is shown. 71 Ark. 494; 75 *Id.* 89; 2 Pom. Eq. Jur. (2 ed.) § 1036; 25 L. R. A. (N. S.) 1194; 106 Am. St. 791; 120 *Id.* 710; 137 *Id.* 342.

2. The question as to laches is determined in each case by its own peculiar facts and circumstances. 125 Am. St. Rep. 628; 49 U. S. (Law. Ed.) 214; 142 S. W. 156; 2 Pom. Eq. (2 ed.) § 820; 113 Am. St. Rep. 1071. Equity aids the diligent, not those who slumber until valuable testimony is lost. 19 Ark. 16. This case falls squarely within the rule. 86 Ark. 591; 87 *Id.* 232; 95 *Id.* 178; 131 Am. St. 947; 138 *Id.* 370. No excuse whatever was offered for the laches.

McCULLOCH, C. J. This is an action instituted by appellant, David M. Finley, to cancel certain deeds which he had executed to W. H. Turner, one of the appellees. He alleged that his uncle, John T. Finley, held these lands, with others, for him in trust under a conveyance from his mother, Lelia C. Finley, executed in the year 1892; that after he became of age said trustee, John T. Finley, conveyed the trust estate to him by deed executed on March 27, 1905, and on the same day caused him, by threats and false promises, to execute, without consideration, a deed to appellee Turner conveying

the lands in controversy; that John T. Finley compelled him,
by similar threats and false promises, to execute another deed
to Turner in November, 1905; that on November 27, 1906,
Turner conveyed said land to Alice Finley, wife of John T.
Finley, and that they reconveyed certain of the lands to Turner.
He alleged that there was no consideration for any of said
conveyances, and that John T. Finley refused to carry out his
promises and threatened to kill him if he sought to cancel
said conveyances.   John T. Finley died in September, 1909,
and this action was instituted in March, 1910, against W. T.
Turner and Alice Finley.

Appellees denied that the conveyances were procured
by threats or false promises of John T. Finley, and denied that
there was no consideration for the conveyances; they alleged
that they had, since the date of the conveyances, paid all
the taxes on the lands regularly, and made improvemen
thereon, and, among other defenses, they pleaded laches in
bar of appellant's right to have the conveyances cancelled.

The chancellor found in favor of appellees, and dismissed
the complaint for want of equity.

The only question which we deem it necessary to discuss
is whether or not appellant is barred by his own laches from
invoking the aid of a court of equity to cancel said conveyances.
He waited nearly five years, and until after John T. Finley,
the principal actor in the transaction—in fact, the only person
who could answer the charges made against him and sustain
the conveyances—had died, before seeking the aid of the court
to right his alleged wrongs.   Appellee says that by this delay
they have lost the testimony of the only witness by which they
can establish the facts necessary to their defense.   Appellant
was about twenty-two years of age when he executed the deeds
in question.   In addition to the deeds, he executed a receipt
in the following form:

"This is to certify that I have received in full from John T.
Finley all money and property, both real and personal, and of
any description whatever, which ever was or now may be due
me from him up to the giving of this receipt; and this acquits
him from any other liability to me as trustee or otherwise."

His only excuse for the delay in asserting his alleged rights
is that his uncle intimidated him by threats of violence.   We

do not think that is sufficient excuse. He was not under the influence of his uncle, but, on the contrary, it appears that, soon after the settlement, he began the operation of a large mercantile establishment in the city of Hope, and was successfully conducting the business at the time he commenced this suit. It is proved that he frequently expressed himself to third persons as being perfectly satisfied with the settlement. If he was dissatisfied and claimed the right to cancel the deeds to Turner, he should have made known his dissatisfaction and asserted his rights before his grantee was put at a disadvantage by the loss of testimony which was necessary to a proper presentation of the issue to a court of equity.

"No rule of law is better settled," said the Supreme Court of the United States, "than that a court of equity will not aid a party whose application is destitute of conscience, good faith and reasonable diligence, but will discourage stale demands, for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights had occurred. The rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible. Each case must necessarily be, governed by its own circumstances, since, though the lapse of a few years may be sufficient to defeat the action in one case, a longer period may be held requisite in another, dependent upon the situation of the parties, the extent of their knowledge or means of information, great changes in values, the want of probable grounds for the imputation of intentional fraud, the destruction of specific testimony, the absence of any reasonable impediment or hindrance to the assertion of the alleged rights, and the like." *Hammond* v. *Hopkins*, 143 U. S. 224. To the same effect, see *Mackall* v. *Casilear*, 137 U. S. 556; *Patterson* v. *Hewitt*, 195 U. S. 309. The same doctrine was announced by this court in *Segers* v. *Ayers*, 95 Ark. 178, where we held that delay for a shorter time than the statutory period of limitation would bar the right to invoke the aid of a court of chancery where, on account of the death of a witness, there was

a loss of the only available testimony to sustain the defense. The same rule was announced by this court in the recent case of *Davis* v. *Harrell*, 101 Ark. 230.   We are, therefore, of the opinion, in recognition of this salutary rule, that the chancellor correctly held that appellant was barred by his own laches.   The decree is therefore affirmed.