COOK *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered April 29, 1912.

1. ESTOPPEL—CONDUCT.—One is not estopped by his conduct where the other party was not led thereby to do or to omit to do something. (Page 330.)

2. RAILROAD—CONSTRUCTION OF VIADUCT—EFFECT OF RELEASE OF DAMAGES.—Where property owners consented that a railway company should build a viaduct which would extend not more than 300 feet south of its right-of-way, and that the viaduct should be built at an elevation not to exceed seventeen feet and to extend practically ten feet south of the north line of their lots, and agreed to release all damages therefor, such release will not preclude the property owners from recovering damages to their property where the viaduct was built so as to extend 500 feet south of the right-of-way, at an elevation of twenty-eight feet, and in such manner as to entail great expense upon the property owners in order that they might have ingress and egress to and from their property.  (Page 331.)

3. SAME—CONSTRUCTION OF VIADUCT—DAMAGES.—A railway company is liable for the damages resulting to property owners by reason of the construction of a viaduct over its roadbed along a street in such manner as to obstruct access to adjacent premises.  (Page 332.)

Appeal from Miller Circuit Court; *Jacob M. Carter*, Judge; reversed.

STATEMENT BY THE COURT:

By an act of the Legislature the St. Louis, Iron Mountain & Southern Railway Company was required to build a steel or iron viaduct over its tracks along and upon College Street in the city of Texarkana to a point not to exceed 300 feet south of its right-of-way, and the city of Texarkana and the railway company were required to pay the abutting property owners

all damages that might accrue to them by reason of the construction of the viaduct.

The appellants were each, separately, the owners of property abutting on College Street. They entered into a contract with the Railway Company and the city, by which, for a consideration of one dollar named in the contract, they agreed "to waive any and all right of action for damages to their respective properties by reason of the building of the viaduct." The waiver however was upon the condition that the owners, their heirs and assigns, should "have the right and privilege at any time to construct and maintain, at their own individual and separate expense, on a plane with such viaduct in front of their respective properties a bridge from the property line to a connection with said viaduct in such manner as to afford a safe means of ingress and egress to and from their respective properties to such viaduct for all purposes."

At the time the contract or waiver was executed the railway company exhibited to the abutting owners plans and specifications of the viaduct which showed that the viaduct would extend not more than 300 feet south of the railway company's right-of-way, and that it would be at an elevation in front of the respective properties not to exceed seventeen feet, and would extend practically ten feet south of the north line of their lots. The abutting owners entered into a waiver agreement with the understanding that the railway company would build the viaduct in accordance with the plans and specifications.

The railway company filed condemnation suits to fix the amount of damages to be paid the abutting property owners by reason of the construction of the viaduct according to the plans and specifications which were then exhibited. When the railway company proceeded to build the viaduct, it changed the plans and specifications so as to continue the viaduct (at the greatest elevation) for more than 150 feet south of the original right-of-way and at an elevation of twenty-eight feet instead of seventeen feet. This construction also changed the viaduct so as to make it extend south of the right-of-way 500 feet instead of 300 feet, so as to pass by the entire frontage of some of the abutting property owners at an elevation of from ten to fifteen feet.

The various property owners each brought suit against the railway company and the city of Texarkana, setting up substantially the above facts, alleging the waiver agreement, that same was procured upon the exhibition of plans and specifications of the viaduct and the representation that the same would be constructed in accordance with those plans and specifications; alleging that the waiver agreement was based upon such representations; and further alleging that the railway company and the city of Texarkana altered the plans, and constructed the viaduct in accordance with the change in the plans and specifications, which greatly damaged the property of plaintiffs, making the viaduct of an impracticable height and entailing upon them great expense in order that they might have ingress and egress to and from their property.

The railway company answered the complaint, denying all of its material allegations; denying that the changes in the plans and specifications of the viaduct were made for the purpose of damaging the property owners or that they were damaged in any manner by reason of the alleged change in the elevation and extension of the viaduct. And the answer averred that if the viaduct was built in front of plaintiffs' property at greater elevation than proposed at the time plaintiffs' waiver was obtained plaintiffs knew same was being done, and that with the full knowledge thereof they permitted the change to be made without objection and acquiesced therein, and are now estopped to deny the right of the railway company to construct the viaduct, and are barred of any right of recovery of damages by reason of such change of such construction. The answer set up the contracts of release or waiver in defense of the plaintiffs' claims for damages.

Separate suits were brought, each plaintiff setting up his damages according to the manner in which he was particularly affected by the change in the plans and specifications for the construction of the viaduct, but the complaints were all substantially the same. The answers presented practically the same issues in each case. The cases were consolidated.

During the examination of a witness introduced on behalf of appellants, the court asked if the plaintiffs had knowledge or notice that the defendant railway company was in effect constructing the viaduct higher and longer than was repre-

sented to them in the obtaining of the releases or waivers. Plaintiffs' attorneys admitted that plaintiffs had such notice, but not until the material for the construction of the viaduct was on the ground and a portion of it up so as to show the elevation. They further admitted that they made no protest or complaint about the construction of the viaduct as it now stands until after the entire structure was completed and the railway company was in the council chamber of the city of Texarkana requesting that the viaduct be accepted under the law authorizing its construction.

The court thereupon refused to permit the plaintiffs to introduce proof upon the facts and contentions set forth in their complaints, and directed a verdict in favor of the defendants. The plaintiffs excepted to the ruling of the court.

In the case of one of the plaintiffs it was admitted that she had recovered judgment against the railway company for damages to her property, but the present suit was instituted for the recovery of additional damages by reason of the change in the plans and specifications under which the viaduct was finally constructed and completed. In the suit in which she had recovered judgment the change in the construction of the viaduct was not taken into consideration.

Judgment was entered in favor of the appellees upon the directed verdicts of the court. The appellants filed their motions for new trials, assigning, among other errors, that the court erred in instructing a verdict for the defendants.

*J. E. Cook* and *J. D. Cook*, for appellants.

1. Under our Code, to support an estoppel *in pais,* or by record, the same should be pleaded with particularity and precision, and nothing will be supplied by inference or intendment. Unless so pleaded, there is no estoppel. 12 Ark. 769; 97 *Id.* 43; 6 Pick, (Mass.) 364; 12 Conn. 365; 44 Oh. St. 253; 14 How. Pr. (N. Y. Sup. Ct.) 97; 139 Ind. 55; 25 Cal. 594. It must also be alleged that the party sought to be estopped has been guilty of conduct inconsistent with the evidence he proposes; that such conduct was with intent to mislead to injury, or that the party was by his conduct and acts of omission or commission grossly negligent, and that the facts were not known, and that prejudice will result, etc.

53 Ark. 196; 3 Mont. 282; 29 Cal. 23; 51 N. H. 333; 8 Wend. (N. Y.) 483; 13 Ore. 410; 26 Vt. 366; 90 Ind. 291; 99 Pa. St. 425; 6 Nev. 377; 39 Cal. 481.

2. One of the essential elements of estoppel by conduct or silence or concealment is that one party should have relied upon the conduct of the other, and had been induced to act or refrained from acting so that he will be substantially injured if the other party should be allowed to repudiate his act. 31 U. S. App. 292; 15 Ala. 91; 89 Col. 258; 8 Cal. 343; 55 Conn. 188; 20 Ga. 600; 89 Mich. 187; 72 Miss. 809; 84 Tex. 575.

3. The party invoking an estoppel on account of the conduct or declaration of another must not only show that such conduct influenced him to his injury, but that he was ignorant of the facts as well as destitute of the means of information. 96 U. S. 326; 106 *Id.* 447-648; 105 *Id.* 312; 15 *Id.* 55; 113 Col. 160; 51 Conn. 277; 80 Ga. 764; 145 Ill. 559; 144 Ind. 46, 83 Md. 10; 97 Mo. 263; 62 N. H. 488; 74 Ark. 136; 76 *Id.* 570; 62 *Id.* 316.

*Powell & Taylor, E. B. Kinsworthy* and *W. E. Hemingway,* for the railway company and *Simms & Cella,* for city of Texarkana.

We demur to the abstract and brief of appellant, on the ground that they fail to state facts warranting a reversal; further that everything alleged might be true, and yet no question for this court to consider is made. 141 S. W. 1181; 142 *Id.* 159; *Ib.* 161. No testimony is set out in the so-called abstract.

Wood, J., (after stating the facts). The court erred in holding that appellants were estopped by their conduct from maintaining their suits against the appellees. The fact that appellants knew, after the railway company had commenced to construct the viaduct, that the same was not being constructed according to the original plans and specifications and made no protest was not sufficient to estop appellants. The railway company did not act upon any conduct on the part of the appellants, and was not in any way misled by anything that the appellants did or failed to do and not induced thereby to construct the viaduct in a manner different from what it intended. Nothing that appellants did caused the

railway company to expend more money than it otherwise would have expended. It was not incumbent upon the appellants to make complaint of the manner in which the railway company was constructing the viaduct. They had no right to do so, and their protests would have been of no avail. The railway company had the right to construct the viaduct according to its own methods, in accordance with the act of the Legislature. As nothing that appellants could have done or said would have influenced or affected the conduct of the railway company in the building of the viaduct, and did not do so, appellants could not be estopped by failing to speak or act in the premises. They were not bound to speak or act. Mere silence or inertia under such circumstances will not work an estoppel. See *Fox* v. *Drewry*, 62 Ark. 316; *Rhodes* v. *Cissel*, 82 Ark. 367.

Certainly, the appellants, by their silence, did not induce the railway company to believe that they would not ask for damages to their property that had not been comprehended in the contract or waiver. It is established that the appellants were suing for damages on account of the construction of the viaduct in a manner that was entirely different from that which had influenced them to sign the releases. Had the viaduct been constructed according to the original plans and specifications, as shown by the appellant's allegations and their proffered evidence, appellants would have been benefited rather than damaged. At least the damages they sustained by reason of the construction of the viaduct according to the plans and specifications adopted at last by the railway company were not in contemplation of the parties at the time the waiver agreements were signed.

In *Warren & Ouachita Valley Rd. Co.* v. *Garrison*, 74 Ark. 136, Mrs. Garrison conveyed to Howard a right-of-way for a wooden tramway over her land. Howard conveyed the right-of-way to a railway company. The court held that Howard had no right to increase the servitude by granting a right for a steam railway. The court said that "Mrs. Garrison might be willing to waive compensation for the first but not for the latter; that she having stood by and permitted the railroad track to be built does not estop her from recovering compensation for the injuries she has received."

A railway company is liable for the damages resulting to abutting property owners by reason of the construction of their roadbeds and other structures on its right-of-way along a street in such manner as to obstruct access to the premises. *Hot Springs Ry. Co.* v. *Williamson*, 45 Ark. 429; *Little Rock & Ft. Smith Ry. Co.* v. *Greer*, 77 Ark. 387.

The court erred in directing verdicts in favor of the appellees, and in overruling appellants' motion for new trials. The judgment is therefore reversed, and the causes remanded for new trial.