GRIMES *v.* CARROLL.

4-9159                                                         229 S. W. 2d 668

Opinion delivered May 1, 1950.

Rehearing denied June 5, 1950.

*James H. Nobles, Jr.,* and *E. B. Kimpel, Jr.,* for appellant.

*Abbott & Abbott,* for appellee.

HOLT, J. A brief history of the background of this litigation reveals that in 1927, E. L. and L. A. Grimes executed their note in the amount of $1,666.66,—secured by a deed of trust on 80 acres of the land involved here, —to J. P. Harris. Thereafter, Harris pledged this note and security to appellees,—retail grocers in El Dorado,— to secure a debt of $1,157.69 which he owed appellees. April 9, 1930, upon default, appellees brought foreclosure proceedings against Harris and E. L. and L. A. Grimes. No final decree was taken, but during the pendency of this action, an adjustment was arranged whereby the Grimes on May 6th, 1930 executed a note for $1,514.14 to Dr. W. B. Johnson, due January 1, 1931, and as security a deed of trust on the above 80 acres together with an additional 40-acre tract. The above foreclosure suit against Harris and E. L. and L. A. Grimes was dismissed without prejudice on May 6, 1930, the same day on which the note and deed of trust were executed to Johnson. The Grimes defaulted on their note to Johnson and on February 19, 1931, Johnson assigned said note and security to appellees, who on February 25, 1931, filed suit to foreclose. March 23, 1931, this latter suit was dismissed and on this same day E. L. and L. A. Grimes executed to appellees the two instruments involved here, an unconditional warranty deed to the 120 acres above for a consideration of $1,605.62 and on the same date, an option contract to repurchase for $1,605.62 within two years.

January 26, 1949, the Grimes brought this suit, alleging, in effect, that the warranty deed and "option" of March 23, 1931, above, constituted, when taken together, an equitable mortgage to secure a subsisting debt, that they had an oral agreement with appellees, at the time, that if the Grimes failed to exercise their option within the two year period, then the parties would resume the relationship of mortgagors and mortgagees, and appellees would take possession of the land and credit the

Grimes with rents and profits until the debt was fully paid.

Appellees answered with a general denial and specifically pleaded as a bar, laches and limitations. From a decree in favor of appellees is this appeal.

Since the decree, E. L. Grimes having died, the cause has been properly revived in the name of the Adiministrator of his estate.

Appellants thus state the issues: "Two, and only two, important questions of law are determinative of this case. First; whether or not the transactions herein involved constitute a mortgage; and second: if they did constitute a mortgage, whether or not plaintiffs are barred by laches or limitations from claiming the property."

After a review of the record presented, we have reached the conclusion that, in the circumstances, appellants have delayed too long in bringing suit and are barred by laches. It therefore becomes unnecessary to decide their first contention above.

In addition to the above facts, it appears that at the time of the execution of the deed and option in question, the land involved had a market value of from $10 to $12 per acre, and when the present suit was filed, the value, due to nearby oil activities, had increased to about $150 per acre.

Appellees took, and have held possession from 1933 (following the expiration of the two year option period) to the present time and have paid all taxes since the execution of the deed and option. Appellants have paid nothing on the debt, and moved from the property to Pine Bluff some time in 1933, and appear not to have lived in Union County since. Appellants at no time between 1933 and the date the suit was filed in 1949, asked for any report or accounting from appellees.

It further appears that the attorney, John Carroll, who handled the above transactions between appellees and appellants died in 1936, and Dr. Johnson, to whom the last deed of trust, above, was executed by appellees,

died about the same year, approximately 13 years before this suit was begun, and in the meantime, as pointed out, the property here has increased in value from about $12 per acre to $150. So for about 16 years, appellants have stood by and have shown a complete lack of diligence in asserting any rights that they might have had. Because of appellants' long and unreasonable delay, appellees have been denied the testimony of both attorney Carroll and Dr. Johnson as to all the facts relating to the above transactions.

"Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an unexcused delay in asserting rights during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to displace such adverse rights for the benefit of those who are bound by the delay; such delay in enforcing one's rights as works disadvantage to another; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; acquiescence in the assertion of adverse rights and undue delay on complainant's part in asserting his own, to the prejudice of the adverse party." 30 C. J. S., p. 520, § 112.

"The doctrine of laches is founded on the equitable maxims of 'he who seeks equity must do equity' and 'equity aids the vigilant.' Hence while there is a great variety of cases in which the equitable doctrine is invoked, each case must depend upon its own particular circumstances and courts of equity have always discouraged laches and delay without cause. * * * It is well settled, however, that he, who, without adequate excuse delays asserting his rights until the proofs respecting the transaction out of which he claims his rights arose are so uncertain and obscure that it is difficult for the court to determine the matter, has no right to relief.

214

So where on account of delay the adverse party has good reason to believe that his alleged rights are worthless or abandoned, where because of the change in condition or relations of the property and parties during the period of delay it would be an injustice to allow the complainant to assert his rights, or in case of intervening equities, it is generally held that laches is a bar to the relief if sought. *Casey* v. *Trout,* 114 Ark. 359, 170 S. W. 75; *Finley* v. *Finley,* 103 Ark. 58, 145 S. W. 885; *Tatum* v. *Arkansas Lumber Co.,* 103 Ark. 251, 146 S. W. 135; *Davis* v. *Harrell,* 101 Ark. 230, 142 S. W. 156; *Rhodes* v. *Cissell,* 82 Ark. 367, 101 S. W. 758; *Williams* v. *Bennett,* 75 Ark. 312, 88 S. W. 600, 112 Am. St. Rep. 57; *Thomas* v. *Sypert,* 61 Ark. 575, 33 S. W. 1059; and *Gibson* v. *Herriot,* 55 Ark. 85, 17 S. W. 589, 29 Am. St. Rep. 17, 444.

"Judge Brewer, who afterwards became an Associate Justice of the Supreme Court of the United States, said while on the circuit, 'No doctrine is so wholesome, when wisely administered, as that of laches. It prevents the resurrection of stale titles, and forbids the spying out from the records of ancient and abandoned rights. It requires of every owner that he take care of his property, and of every claimant, that he make known his claims. It gives to the actual and larger possessor security, and induces and justifies him in all efforts to improve and make valuable the property he holds. It is a doctrine received with favor because its proper application works out justice and equity and often bars the holder of a mere technical right, which he has abandoned for years, from enforcing it when its enforcement will work large injury to many.' *Naddo* v. *Bardon,* 51 Fed. 493, 2 C. C. A. 335." *Norfleet* v. *Hampson,* 137 Ark. 600, 209 S. W. 651.

We also said in *Daniels* v. *Moore,* 197 Ark. 727, 125 S. W. 2d 456: "Appellants should be denied a recovery on account of their inexcusable delay in bringing their suit. The first deed to the 40-acre tract was executed in 1922 and the second in 1923 and according to appellants' contention the debt was paid in 1926. This suit was not filed until September 25, 1937, more than fifteen years after the execution of the deed and more than

eleven years after the time when appellants claimed that J. B. Moore was paid for his services. J. B. Moore died in 1926 and appellees herein have been deprived of his testimony as to the true nature of the original transactions and because of appellants' delay it has, of course, become difficult for the Moores to prove just what the original transactions were. On account of this unnecessary delay and the loss of the testimony of J. B. Moore who might speak relative to the original transactions the doctrine of laches should be applied.''

Accordingly, the decree is affirmed.