Claude RICE and Charlotte RICE, his wife,
John C. PARRISH and Leona PARRISH, his wife,
and John ALLEN *v.* Georgea Black McKINLEY

CA 79-130                           590 S.W. 2d 305

Opinion delivered October 31, 1979
Released for publication December 5, 1979

*Ray H. Bowman* and *Malcolm Smith,* for appellants.

*Andrew L. Clark,* for appellee.

M. STEELE HAYS, Judge. This is an appeal from a decree granting the specific performance of a contract entered into between appellant, Claude Rice, and appellee, on February 6, 1968.

Appellant argues that no contract existed, citing *Myers* v. *Snider,* 226 Ark. 849, 294 S.W. 2d 495 (1956), to the effect that one seeking specific performance must prove the essentials of a valid contract and a readiness to perform the contract.

As to the first part of the argument, it is clear that the letter signed by appellant on February 5, 1968, and by appellee on February 6, 1968, meets all the requirements of a binding, valid contract. The letter plainly imposes mutual obligations on the signees, Claude Rice and Georgia Black McKinley, and the promises of one party is a sufficient consideration for the promises of the other. *Abbott* v. *Arkansas Utilities Company,* 165 F. 2d 339 (1948); *Southern Surety Company* v. *Phillips,* 181 Ark. 14 (1930). Appellant says there was no "meeting of the minds," but the letter is clear and specific in the obligations undertaken by each party, that is: appellant expressly recognized that appellee was the owner of the disputed strip, that he would erect a fence before a given time, that he would fill a certain ditch at the end of the lease period, that the parties would select a surveyor to do necessary surveying and bear the expense equally, that each would convey certain lands to the other following the survey and that appellee would lease to appellant the strip in dispute for five years with right of renewal for an additional five years at $12.50 per acre per year. A "meeting of the minds" is defined simply as an agreement reached

by the parties to a contract and expressed therein, *Hudson* v. *Columbian Transfer Company,* 100 N.W. 402, 37 Mich. 255, or as the equivalent of mutual assent or mutual obligation, *Wetherbee* v. *Gary,* 381 P. 2d 237. Clearly, the letter expresses an agreement and recites a mutual exchange of obligations entirely sufficient to meet the essentials of a contract.

As to the second part of the argument, we find nothing in the record during the entire period under question to support the argument that appellee was not ready and willing to perform. In fact, it appears that the appellee recognized the agreement and was ready to perform those things required of her under its provisions. She accepted the annual lease payments, permitted appellant to farm the lands under the lease, joined in the letter of February 3, 1972, ordered a survey and agreed to pay one-half of the expense, indicated her willingness to go forward with the agreement through Mr. Jenning's contact with Mr. Dover in 1970, wrote to the Parrishes and to appellant, and finally, tendered her deed to the appellant in March of 1974.

Appellant admits the genuineness of his signature, but argues that the letter-contract could not have been signed, as appellee states, on February 5 and 6, 1968, relying on Defendant's Exhibit No. 1, a letter dated February 29, 1968, in which modifications were discussed. It is evident that changes were made after the dates recited in the letter-contract, but appellant appears to have both expressly and impliedly accepted and concurred in those modifications by acting on the contract in numerous ways and having received the benefits of the agreement over several years and cannot now be heard to deny its very existence.

Next, the appellants insist that the suit filed by appellee on January 28, 1976, is barred by the statute of limitations and by laches. Appellee contends that this point was not raised below and cannot now be raised on appeal, citing *Campbell* v. *State,* 265 Ark. 575 and *Garner* v. *Holland,* 265 Ark. 536. But the record shows that an amended answer on behalf of appellants, Claude Rice and Charlotte Rice, was filed on January 19, 1977, pleading the statute of limitations

and laches, so the argument that the issues were not raised properly in the court below is without merit.

Thus, the final, and more difficult, issue presented by this appeal is the question of limitations and laches. In a thorough and well reasoned memorandum opinion, the chancellor held, correctly, that the applicable statutory period of limitations was five years and rejected the appellant's contention that inasmuch as the agreement was dated February 6, 1968, the deadline for filing suit would have been February 6, 1973. The error of appellant's position is that the period of limitations runs from the point at which the cause of action accrues rather than from the date of the agreement. Admittedly, the nature of the agreement here is such that determining when the cause of action accrues is not without difficulty, but we believe the chancellor was correct in holding that the cause of action did not accrue until sometime after January 29, 1971, and therefore, the suit filed on January 28, 1976, was within the five-year period.

When did the appellee's cause of action accrue? The letter contract between the parties provided that a surveyor would be selected by agreement and the cost borne equally, and, using that survey as a basis, the appellant Rice would convey to appellee Parcel "B" and appellee "in turn" would convey Parcel "A" to him. Whether the survey of L. C. Keefe (Plaintiff's Exhibit No. 2) is the survey contemplated by this provision, or the unfinished survey referred to in the Memorandum Opinion of the chancellor is not entirely clear. Appellant argues that the April (1968) survey is the one contemplated and we are inclined to agree, inasmuch as it purports to describe the two tracts (Parcel "A" and "B") and is made for "Claude Rice and the Farelly Lake Company." However that may be, the issue is moot for the reason that the parties voluntarily chose to defer the exchange of deeds until the litigation mentioned in Paragraph 4 of the agreement was completed. This deferment was at the suggestion of appellant's attorney and was sensible in light of the likelihood that the outcome of the litigation would necessitate a correction of the description in the deeds.

What we perceive to have occurred, therefore, is that

the parties *mutually agreed* to defer to an undesignated time in the future the agreed exchange of deeds and allowed the matter to remain in that posture until Mr. Jennings began renewing efforts to bring the matter to a head. Under these circumstances, we find no law, nor do appellants cite any, which holds that the statute of limitations was operating and we agree with the chancellor that there is no just basis on which to apply it.

Appellant insists that the statute of limitations is not tolled by "conversations" and surely that is true. But the point is that this is not a case in which one party to an agreement is in default in an obligation due at a specified time, or has breached a duty on a certain date. In those instances, it is clear that a tolling of the statute of limitations requires more than "conversation." But where, as here, the parties have entered into an agreement which requires a series of mutual acts, some unilateral, some bilateral in character and have left the time of those acts open-ended, and where one contrives to receive the benefits of the agreement, and make lease payments annually thereunder, the cause of action does not accrue until one party has by word or conduct indicated to the other a repudiation of the agreement.

As stated, we find no case presenting precise authority, but the spirit of this point is supported by the general statements of the law and by the dictum in related cases.

In *Federal Land Bank of St. Louis* v. *Miller,* 184 Ark. 415 (1931), the statute of limitations was pleaded in defense of a suit by way of intervention by a mother to cancel a deed given to her son, in consideration of the son's promise to suitably maintain her, alleging that the son had failed to keep his agreement. The son had subsequently given a deed of trust to the appellant bank, and then defaulted in the payments to the bank and in support of the mother. Denying the defense of limitations, the court said:

> The insistence that the intervener is barred by the statute of limitations from the assertion of her claim of maintenance may be disposed of by saying that her son

and grantee never at any time repudiated the obligation which he assumed in consideration for the execution and delivery of the deed to him. [184 Ark. at 420]

American Jurisprudence, 2d, Volume 51, Limitations of Actions, Section 127, states the rule to be as follows:

If a right of action depends upon some contingency or a condition precedent, the cause of action does not accrue and the statute of limitations does not begin to run until that contingency occurs or the condition precedent is complied with.

Thus, an agreement to convey an interest in property after partition cannot be enforced until partition, and the statute of limitations does not begin to run against a suit to enforce such agreement until that time. If one promises to pay when able, a cause of action does not arise and therefore the limitation period does not start to run until there exists such an ability to pay. And a like principle applies when payment is to be made out of a particular fund to be created by the act of the debtor.

Finally, there is an element of waiver and estoppel present in the appellant's benefitting under the agreement on the one hand and asserting the defense of limitations on the other. Section 431 of American Jurisprudence, 2d, *supra*, states:

One cannot justly or equitably lull his adversary into a false sense of security, thereby causing him to subject a rightful claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.

If it were necessary to fix the time appellee's cause of action occurred, it would, we believe, be the end of the lease period, i.e. December 31, 1972, plus the lapse of a reasonable time thereafter, as it was not until this point in time that the appellant was in breach of any obligation of the agreement (except the exchange of deeds, which was postponed at

appellant's suggestion) as it was not until the end of the lease that appellant was to perform the filling of the ditch. Applying the five year period of limitation to this accrual makes it apparent that appellee's suit on January 28, 1976, was within the statute.

Nor do we agree that the doctrine of laches should work to defeat the appellee's suit to enforce the agreement. Laches is an unreasonable delay by the party seeking relief under such circumstances as to make it unjust or inequitable to the other party to enforce the agreement. The appellant was at least an equal participant in the delay in exchanging deeds and cannot be heard to say that laches should protect him, or that appellee's delay was without cause. *Grimes* v. *Carroll,* 217 Ark. 210, 229 S.W. 2d 668 (1950); *Norfleet* v. *Hampton,* 137 Ark. 600, 209 S.W. 651 (1919); *Gravel* v. *State,* 181 Ark. 216, 26 S.W. 2d 57 (1930).

The decree of the lower court is, therefore, affirmed.