In re BRITTENUM &
ASSOCIATES, INC., Debtor.

James F. DOWDEN, Trustee, Appellee,

v.

CROSS COUNTY BANK, Appellant.

Jon R. Brittenum; Jana D. Brittenum;
Melvyn L. Bell; Fred E. Halstead; Jer-
ry Halstead; and Diana Halstead Jones.

No. 88–1475.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 21, 1988.

Decided Feb. 14, 1989.

Hermann Ivester, Little Rock, Ark., for appellant.

Robert R. Ross, Little Rock, Ark., for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

Cross County Bank (bank) appeals from a final judgment entered in the District Court[1] for the Eastern District of Arkansas affirming a bankruptcy court[2] decision holding that a certificate of deposit and a savings account opened by the debtor, Brittenum & Associates, Inc., a broker-dealer, have special reserve status and are the property of the estate in bankruptcy. *In re Brittenum & Assocs.*, 83 B.R. 574 (E.D.Ark.1988), *aff'g* No. AP–86–50M–SIPA (Bankr.E.D.Ark. Aug. 27, 1987). For reversal, the bank argues the district court erred in holding that (1) no formal written contract between a broker-dealer and a bank is required by SEC Rule 15c3–3(f), 17 C.F.R. § 240.15c3–3(f) (1987), in order to establish a special reserve account, (2) the letter agreements were contracts, and (3) the terms of the contracts were not modified or rescinded by the debtor's conduct. For the reasons discussed below, we affirm the judgment of the district court.

In June 1982 the debtor bought a $500,-000 certificate of deposit (CD 6620) from the bank. In 1984 the debtor added the words "Special Reserve Account for the Exclusive Benefit of Customers" to the face of the CD; the bank's president initialed the CD. The debtor also sent a letter to the bank setting out pertinent portions of SEC Rule 15c3–3 and stating that the letter was written to meet SEC requirements. The letter stated that CD 6620 "shall at no time be used as security for a loan to the firm by the bank and shall be subject to no right, charge, security interest, lien, or claim of any kind in favor of the bank or any person claiming through the bank." The bank's president acknowledged receipt of the letter by signing at the bottom of the letter. The debtor did not explain the significance of the special reserve language contained in this and subsequent letters, except to say that it was required by its auditors, and bank officials did not inquire.

In May 1985 the debtor borrowed $500,-000 from the bank; the debtor pledged CD 6620 as collateral for the loan. (The debtor arranged the loan to avoid cashing in the CD and having to pay a penalty.) With the loan proceeds, the debtor opened savings account No. 01–494852–10 at the bank in the name of "Jon R. Brittenum & Associates, Inc. Special Reserve Account for the Exclusive Benefit of Customers." The bank sent a letter to the debtor about the special reserve status of the savings account; the letter contained language similar to that contained in the letter the debtor had sent to the bank about CD 6620.

In June 1985 CD 6620 matured. The debtor used the $500,000 proceeds to satisfy the May 1985 loan. The debtor withdrew $300,000 from the savings account to buy another CD (CD 9545) from the bank. CD 9545 was entitled "Jon R. Brittenum & Associates, Inc. Special Reserve Account for the Exclusive Benefit of Customers." The sum of $200,000 remained in the savings account. In July 1985, at the request of the debtor, the bank sent a letter to the debtor about the special reserve status of CD 9545; this letter also contained language that was similar to the CD 6620 and savings account letters.

In early January 1986 the debtor borrowed $300,000 from the bank and pledged CD 9545 as collateral. The debtor was unable to repay the bank, and the bank

---

1. The Honorable Elsijane T. Roy, United States Senior District Judge for the Eastern District of Arkansas.

2. The Honorable James G. Mixon, United States Bankruptcy Judge for the Eastern District of Arkansas.

subsequently took possession of CD 9545 and claimed a perfected security interest in it.

On January 30, 1986, the district court determined that the customers of the debtor needed protection under the Securities Investor Protection Act of 1970 (SIPA), 15 U.S.C. § 78aaa *et seq.*, and appointed a trustee. The case was removed to the bankruptcy court for administration and liquidation pursuant to SIPA § 5(b)(4), 15 U.S.C. § 78eee(b)(4). The trustee commenced a turnover action against the bank after the bank resisted the trustee's request that it turn over all the debtor's funds and securities. The bank claimed that it was entitled to recover the principal ($300,000), plus interest and attorney's fees, from CD 9545. Alternatively, the bank claimed a right of setoff against CD 9545 and the savings account, which, at the time of the bankruptcy filing, had a balance of $373,000. The trustee claimed that CD 9545 and the savings account were special reserve accounts that could not be pledged as collateral and were not subject to a right of setoff.

The bankruptcy court held that CD 9545 and the savings account were special reserve accounts and thus the property of the estate free and clear of any claim of lien or right of setoff by the bank. Bankruptcy court slip op. at 10–12. The district court reviewed the legal issues de novo and affirmed the decision of the bankruptcy court. 83 B.R. at 578–79. This appeal followed. The relevant facts are not in dispute. Our standard of review is the same as that of the district court: we review the legal issues de novo. *E.g., In re Martin,* 761 F.2d 472, 474 (8th Cir.1985).

FORMAL WRITTEN CONTRACT

 The bank first argues the district court erred in holding that SEC Rule 15c3–3(f), 17 C.F.R. § 240.15c3–3(f), does not require a formal written contract between a broker-dealer and a bank in order to establish a special reserve account. The bank argues that the plain language of the rule requires a formal "written contract" and that the letter agreements in question cannot be considered formal "written contracts." We disagree.

SEC Rule 15c3–3(e), 17 C.F.R. § 240.15c3–3(e), requires every broker or dealer to maintain a "special reserve bank account for the exclusive benefit of its customers," containing a certain minimum amount, separate and apart from any other bank accounts. SEC Rule 15c3–3(f), 17 C.F.R. § 240.15c3–3(f), requires every broker or dealer who is required to maintain a special reserve account to "obtain and preserve" "written notification" from each bank that the bank was informed that the cash or securities deposited therein are being held for the exclusive benefit of customers of the broker or dealer and are being kept separate from any other accounts maintained by the broker or dealer with the bank. This subsection further requires the broker or dealer to have a "written contract" with the bank which provides that the cash or securities deposited in a special reserve account shall "at no time be used directly or indirectly as security for a loan to the broker or dealer by the bank" and shall be subject to "no right, charge, security interest, lien, or claim of any kind" in favor of the bank or anyone claiming through the bank. *Id.*

The parties have not cited any case law construing the term "written contract" as it is used in this rule, and we have found none. We hold that under SEC Rule 15c3–3(f), 17 C.F.R. § 240.15c3–3(f), the letter agreements in question are "written contracts" within the meaning of the rule. We cannot read into the rule a requirement that a written contract be more than a letter signed by one of the parties to which the recipient adds his or her signature below the language stating "You may indicate your understanding and acceptance of the above by signing both the original and copy of this letter and returning the copy to me." The rule itself refers only to a "written contract." Moreover, at trial, an experienced securities consultant testified that he had never seen a formal written contract executed to establish a special reserve account and that documents similar to the letter agreements at issue here are used to establish such accounts instead.

## WHETHER THE LETTER AGREEMENTS ARE CONTRACTS

■ The bank next argues the district court erred in holding that the letter agreements in question were contracts between the debtor and the bank to establish special reserve accounts. The bank argues there was no "meeting of the minds" and that the parties' prior course of dealing and the circumstances surrounding each transaction were inconsistent with an intent to form a contract to establish a special reserve account. The bank also argues that, even assuming the letter agreements are contracts, the contracts are not enforceable because the debtor misrepresented the purpose and significance of the letter agreements. We disagree.

We agree with the district court's holding that the letter agreements were written contracts. A letter may constitute a contract so long as mutual obligations are imposed. *See, e.g., Rice v. McKinley,* 267 Ark. 659, 590 S.W.2d 305, 306-07 (Ct.App. 1979). Here, the letter agreements, whether prepared by the debtor or the bank, were acknowledged in writing by the other party and contained specific information about the terms and conditions of the special reserve accounts and the obligations of each party.

Nor are these contracts unenforceable because the bank may not have fully appreciated the purpose and the significance of the special reserve account language. In general a person is bound by what he or she signs and is charged with knowledge of the legal effect of the instrument, unless fraud or inequitable conduct is charged. *See, e.g., Belew v. Griffis,* 249 Ark. 589, 460 S.W.2d 80, 82 (1970). There is no evidence of misrepresentation here, much less fraud or inequitable, or unconscionable, conduct. The letter agreements expressly stated, in straightforward language, that, pursuant to SEC Rule 15c3-3(f), 17 C.F.R. § 240.15c3-3(f), the bank was to hold the certificate of deposit, or savings account, as a special reserve account for the exclusive benefit of the customers of the debtor and that the special reserve account could not be used as collateral for a loan to the debtor by the bank or be subject to any right, charge, security interest, lien or claim of any kind in favor of the bank.

## MODIFICATION OR RESCISSION

■ The bank next argues the district court erred in holding that the terms of the contracts were not modified or rescinded by the debtor's conduct. The bank argues that the debtor's assignment of CD 9545 to the bank as collateral for the loan and its endorsement of the signature card for the savings account modified or rescinded the terms of the contracts establishing the special reserve accounts and thus left CD 9545 and the savings account subject to the bank's lien or, alternatively, right of setoff. We disagree.

As noted by the district court, SEC Rule 15c3-3(g), 17 C.F.R. § 240.15c3-3(g), allows a bank to presume that any request by a broker or dealer for withdrawal of funds from a special reserve account is in conformity and compliance with the rule. Here, the bank does not seek to defend a withdrawal of funds by the debtor. Instead, the bank seeks access to the special reserve accounts as collateral for a loan it made to the debtor or, alternatively, to enforce its right of setoff. Such access was expressly prohibited by the written contracts that established the special reserve accounts. Morover, we think any modification or rescission by the debtor or the bank of the contracts establishing the special reserve accounts would be void under § 29 of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(a). *Cf. Natkin v. Exchange National Bank,* 342 F.2d 675, 676 (7th Cir.1965) (contracts in violation of Fed.Res.Reg.U held void); *In re Schroud,* 1 B.R. 583, 589 (Bankr.N.D.Ill.1979) (same).

■ We note in particular that although 11 U.S.C. § 553 specifically recognizes the right of setoff in bankruptcy, "for this right of setoff to apply, there must be mutuality of obligation between debtor and creditor, a true debtor-creditor relationship." *In re Multiponics, Inc.,* 622 F.2d 725, 727 (5th Cir.1980). The relationship between a depositor and a bank is presumptively that of a debtor and creditor. *Id.* at 728. However, the presumption of a debtor-creditor relationship is rebutted, and the

funds are outside the bank's right of set-off, when the bank is put on notice of a third-party's interest in the deposited funds, for example, when the funds are held in a special account or in trust. *Id.; Bridgeport Co. v. United States Postal Service,* 39 B.R. 118, 129–30 (Bankr.E.D. Ark.1984), *citing Smith v. Security Bank & Trust Co.,* 196 Ark. 685, 119 S.W.2d 556, 561 (1938). A bank may be put on notice by the very name on the accounts. *See United States v. Butterworth–Judson Corp.,* 267 U.S. 387, 394–95, 45 S.Ct. 338, 340, 69 L.Ed. 672 (1925). Here, the CDs and the savings account were designated on their face as "Special Reserve Accounts for the Exclusive Benefit of Customers" and the very language of the letter agreements establishing these accounts was consistent with the special purpose of the accounts. Thus, the bank had actual notice that the CDs and the savings account were special accounts and thus not subject to the bank's right of setoff.

In sum, we agree with the district court that the letter agreements were written contracts establishing special reserve accounts pursuant to SEC Rule 15c3–3, 17 C.F.R. § 240.15c3–3, and that, as special reserve accounts, CD 9545 and the savings account were not subject to the bank's claimed lien or asserted right of setoff.

Accordingly, the judgment of the district court is affirmed.