**RPM MANAGEMENT, INC., Plaintiff,**

v.

**Cynthia APPLE, et al., Defendants.**

**Civil Action No. 2:93–CV–585.**

United States District Court,
S.D. Ohio,
Eastern Division.

June 21, 1996.

---

David Alan Dye, Columbus, OH, for plaintiff RPM Management, Inc.

Curtis Franklin Gantz, Lane Alton & Horst, Columbus, OH, for defendants Cynthia Apple and Roger R. Apple.

Robert David Bergman, Columbus, OH, for defendant Ted Stygler's Construction Company.

### *OPINION AND ORDER*

KING, United States Magistrate Judge.

Plaintiff, a real estate developer and builder, originally asserted claims for breach of contract, *quantum meruit* and copyright infringement. Upon consent of the parties, this matter was transferred to the undersigned for disposition. 28 U.S.C. § 636(c). A jury returned verdicts for the plaintiff in the amounts of $5,000.00 actual damages for copyright infringement and $10,000.00 for *quantum meruit*. This matter is now before the Court on plaintiff's claim for an award of statutory damages under 17 U.S.C. § 504 in lieu of actual damages on its copyright claim.

Briefly, plaintiff constructed a model home in the Jefferson Meadows subdivision based upon architectural plans purchased from an Atlanta company and modified by a local architect. Defendants, husband and wife, inquired of plaintiff about constructing a similar home for them in the same subdivision. Plaintiff gave to defendants copies of a floor plan and exterior renderings generally representative of the model home. Defendants made hand drawn revisions, and another local architect, at the request of plaintiff, prepared plans with exterior changes to the model home. Elevations of those plans were given to defendant Roger Apple by the architect on approximately March 5, 1993.

Defendants then entered into a contract for construction of the home with Ted Stygler Construction, Inc.[1] Defendants gave some or all of the floor plans or elevations to Ted Stygler Construction, caused them to be copied and subsequently constructed the residence consistent with those drawings. Copyright in the plans was registered on approximately May 21, 1993.

Plaintiff, to whom the architect assigned all rights to the copyright, contends that defendants infringed the copyright in the plans by copying a portion of the plans for use in the construction of the residence. The jury found defendants' copyright infringement to be willful.

*Availability of Statutory Damages*

Section 504 of Title 17 of the United States Code, which governs remedies for infringement, provides in pertinent part:

(a) Except as otherwise provided by this title, an infringer of copyright is liable for either—

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

(b) The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. . . .

(c)(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $500 or more than $20,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may

---

1. Ted Stygler Construction, Inc. was also named as a defendant in this action, but subsequently filed a petition in bankruptcy.

increase the award of statutory damages to a sum of not more than $100,000....

17 U.S.C. § 504.

Defendants assert that plaintiff is precluded from recovering an award of statutory damages under § 504(c) because the infringement occurred prior to registration of the copyright. Plaintiff asserts that statutory damages are available because the record establishes that publication of the copyrighted work occurred prior to the date of infringement and registration occurred within three months of that publication.

■ In 1976, Congress enacted a major revision of the 1909 Copyright Act. Under the 1976 Act, registration of a copyright is ordinarily a prerequisite to the recovery of statutory damages:

In any action under this title ... no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration....

17 U.S.C. § 412(1). One of the purposes of this statute was to "induce[ ] in some practical way" copyright registration. H.R.Rep. No. 1476, 94th Cong., 2d Sess. (1976) U.S.Code Cong. & Admin.News 1976, p. 5659. The method for doing so was to make available special remedies in the form of statutory damages and attorneys fees under §§ 504 and 505 in instances where registration occurs prior to infringement. Those statutory remedies are not available, however, for infringement of an unpublished work not yet the subject of copyright registration.[2]

Congress also saw a need to accommodate the exceptional situation of "newsworthy or suddenly popular works which may be infringed almost as soon as they are published, before the copyright owner has had a reasonable opportunity to register his claim." *Id.* Consequently, Congress also enacted 17 U.S.C. § 412(2), which effectively authorizes an award of statutory damages and attorneys fees in connection with an infringement that occurs before registration so long as registration "is made within three months after the first publication of the work." 17 U.S.C. § 412(2). Thus, because the architectural drawings at issue in this case were registered on approximately May 21, 1993, plaintiff could satisfy the criteria of § 412(2) for an award of statutory damages and attorneys fees under §§ 504 and 505 if the architectural drawings were "published" prior to the defendants' copyright infringement, which occurred on or after March 5, 1993.

*Who Determines the Issue of Publication?*

The certificate of registration filed in connection with the drawings at issue in this case states that publication of the drawings occurred on February 24, 1993. "In any judicial proceedings, the certificate of a registration ... shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate...." 17 U.S.C. § 410(c). *See Hi–Tech Video Prods., Inc., v. Capital Cities/ABC, Inc.,* 58 F.3d 1093 (6th Cir.1995). Relying on this statutorily created presumption, plaintiff asserts that, because the defendants did not challenge at trial either the fact or the date of publication as reflected in the certificate, publication must now be deemed to have occurred on February 24, 1993.

■ Neither side argues that the issue of publication is not a jury question, and plaintiff strongly urges the Court to hold that it is. In this regard, plaintiff argues that the burden was on defendants to establish nonpublication and that they should, at a minimum, have sought to put the issue of publication before the jury during trial. Not having done so, according to plaintiff, defendants are now precluded from challenging the fact of publication.

Defendants, on the other hand, point out that plaintiff was pursuing at trial only its claim for actual damages, a claim that does not turn on the issue of publication. Therefore, according to defendants, there was no reason to raise at trial any issue relating to publication.

**2.** Such infringements are nevertheless remediable, however, by an award of actual damages, profits and injunctive relief. 17 U.S.C. § 504.

It is within the sound discretion of the Court to determine the amount, if any, of statutory damages to which the plaintiff is entitled. Although publication may turn on issues of fact, it is nevertheless an element of statutory damages. " 'The very language of [§ 504(c) ] suggests equitable relief.' Congress emphasized that all determinations dealing with an award of statutory damages should be made by the Court rather than the jury." *Glazier v. First Media Corp.*, 532 F.Supp. 63, 65 (D.Del.1982) (quoting *Rodgers v. Breckenridge Hotels Corp.*, 512 F.Supp. 1326, 1327 (E.D.Mo.1981)); *see also Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir.1983) ("The determination of statutory damages ... is assigned by statute to the judge rather than the jury.... Thus, election of statutory damages would not necessitate a new trial.").

Moreover, the material facts surrounding the issue of publication in this case are not in dispute. Accordingly, the issue in this case is one of law for the Court to determine, rather than one of fact. *See Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1450 (9th Cir.1991); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir.1989).

For both these reasons, then, the Court will determine the issue of publication.

*Publication and Statutory Damages*

The Court will next consider whether publication, or the lack thereof, precludes an award of statutory damages in this instance. "Publication," for this purpose, is defined as

the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101.

It is undisputed that the defendants' infringement occurred on or after March 5, 1993, and that the copyright was registered on or after May 21, 1993. Therefore, if an award of statutory damages is to be available to plaintiff, publication must have occurred prior to March 5, 1993. *See* 17 U.S.C. § 412(2).

A full set of the plans was delivered to a bank on March 2, 1993 in connection with defendants' application for construction financing; on March 5, 1993, portions of the plans, or elevations, were delivered to Roger Apple, who subsequently caused the plans to be copied and used in connection with the construction of the residence. Plaintiff contends that either or both of these distributions qualifies as the "publication" necessary to an award of statutory damages under § 412(2). Defendants, on the other hand, contend that these deliveries constitute, at best, a "limited publication," and do not qualify as the "publication" required by §§ 101 or 412.

A "limited publication" communicates the contents of a [work] ... to a definitely selected group and for a limited purpose, and without the right of diffusion, reproduction, distribution or sale ... [and] does not result in loss of the author's common-law right to his [work].... [T]he circulation must be restricted both as to persons and purpose, or it cannot be called a private or limited publication.

*Hubco Data Products Corp. v. Management Assistance Inc.*, 219 U.S.P.Q. 450, 455, 1983 WL 1130 (D.Idaho 1983) (citing *White v. Kimmell*, 193 F.2d 744, 746–47 (9th Cir. 1952)). A "general publication," on the other hand, "occurs when a work is made available to members of the public regardless of who they are or what they do with it." *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d at 1451–52 (citing *Burke v. National Broadcasting Co., Inc.*, 598 F.2d 688 (1st Cir.), *cert. denied*, 444 U.S. 869, 100 S.Ct. 144, 62 L.Ed.2d 93 (1979)).

The doctrine of "limited publication" was developed prior to the passage of the 1976 Act, which effected the total preemption of common law copyright by the federal statute. Nevertheless, the consensus of commentators is that the notion of "general pub-

lication" versus "limited publication" retains vitality even under the 1976 Act. *See, e.g.,* 1 M. Nimmer and Nimmer, *Nimmer on Copyright* § 4.13[B] (1996). However, registration occurring after only a limited publication will not provide the necessary predicate for an award of statutory damages or attorney's fees in connection with an infringement that commenced prior to registration. *Aerospace Servs. Int'l. v. LPA Group, Inc.,* 57 F.3d 1002, 1003–04 (11th Cir.1995) *(per curiam );* 2 M. Nimmer and D. Nimmer, *Nimmer on Copyright* § 7.16[C][1] n. 131 (1996).

A limited publication requires both communication of the copyrighted work to a selected group and a limited purpose. If either of these criteria is lacking, the disclosure constitutes a general publication. *White v. Kimmell,* 193 F.2d 744. Although neither the parties nor this Court have found a case precisely on point, there are some cases that are illustrative of the two necessary components of limited, versus general, publication.

■ The United States Court of Appeals for the Sixth Circuit characterized, albeit without discussion, as a publication the distribution of brochures containing abridged floor plans by a home builder to a class of potential buyers. *Robert R. Jones Assoc., Inc. v. Nino Homes,* 858 F.2d 274, 275, 281 (6th Cir.1988). In that case, the distribution was not limited by the copyright owner to any particular class of persons or selected group. "The mere fact that only a selected group evinced interest in obtaining copies will not render the publication limited." 1 M. Nimmer and D. Nimmer, *Nimmer on Copyright* § 4.13[A][1] (1996). By contrast, the copies of the plans distributed to the bank and to Roger Apple in this case were not made available to the general public. Rather, the plans were limited to only that select group who had reason to see the plans in connection with the design and construction of the Apple residence. Accordingly, the distributions of the copyrighted work made in this case were in fact limited to a selected group.

■ However, disclosure of a protected work to only one person can nevertheless qualify as a general publication if the disclosure is not subject to either express or implied limitations on the purpose for such disclosure. The absence of restriction on the person's ability to reproduce, distribute or sell the work under these circumstances can, in theory at least, result in the disclosure of the work to the general public, the critical factor in a "general publication." 1 M. Nimmer and D. Nimmer, *Nimmer on Copyright* § 4.13[A][2] (1996). Thus, where architectural plans are provided to other experts, contractors or governmental agencies for purposes of review, courts typically find only a limited publication. *See, e.g., Intown Enterprises, Inc. v. Barnes,* 721 F.Supp. 1263 (N.D.Ga.1989); *Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Const. Co.,* 542 F.Supp. 252 (D.Neb.1982). In similar fashion, the release of the full set of plans to the bank on March 2, 1993, carried with it an implied, if not express, restriction on the uses to which the bank could put the plans. Certainly, it cannot reasonably be concluded that the bank was free, under the circumstances presented in this case, to reproduce, distribute or sell the plans to the public.

Similarly, the disclosure of the elevations to Roger Apple did not qualify as a general publication. As even plaintiff concedes, Roger Apple was not given the right to copy the elevations or to use those elevations in the construction of his home. *Plaintiff RPM Management Inc.'s Reply to Defendants' Memorandum Opposing Award of Statutory Damages,* at 4.[3] Nevertheless, plaintiff argues that the restrictions imposed on Roger Apple in connection with the delivery of the elevations to him, which restrictions "merely parallel the exclusive rights retained by a copyright owner under the 1976 Act," *Id.,* should not serve to divest plaintiff of rights otherwise available under § 412(2).

In support of its position, plaintiff cites *Granse v. Brown Photo Co.,* 228 U.S.P.Q. 635, 1985 WL 26033 (D.Minn.1985), in which the Court held:

**3.** Indeed, the jury's verdict on plaintiff's copyright claim forecloses any argument to the contrary.

Granse's business is commercial or professional photography. Customers sit for Granse who takes their photograph and produces a proof. Granse later shows the proofs to the customer who may receive a free $8 \times 10$ copy of the proof, choose to order copies of the proof, or choose not to order copies of the proof. When Granse gives the customers a free $8 \times 10$ photograph or provides the paying customers with a photograph, he effectively transfers or sells ownership of that copy to the customers. This transfer or sale of the copy to the customer, the Court finds, is a publication of that copy. Although Granse may claim a copyright in the photographs, he nonetheless has published the copies of the photographs.

*Granse,* 228 U.S.P.Q. at 645. *Granse* is strongly criticized in 1 M. Nimmer and D. Nimmer, *Nimmer on Copyright* § 4.13[B] n. 19 (1996), and this Court agrees that the holding in *Granse* overlooks the statutory requirement that the "publication" contemplated by 17 U.S.C. § 101 be "to the public."

Historically implicit in this public dimension of the notion of "general publication" is the unrestricted ability to copy the work, as well as to distribute or disseminate the work to others. While plaintiff concedes that the disclosure of the elevations to Roger Apple did not permit him, under the circumstances, to duplicate or to copy those elevations, plaintiff asks this Court to nevertheless characterize the disclosure of the plans to him as a "general publication."

■ Plaintiff argues that to define "publication" in such a way as to require the copyright holder to relinquish all rights in the copyright is both unreasonable and inconsistent with the 1976 Act:

> If, as Defendants' argument requires, there can be no publication if there is (i) limited distribution, and (ii) retention of normal copyright rights, then an author of a work of limited interest (*i.e.,* Custom Home Plans) will never have full copyright protection (because the author's work will never be considered to be "published") until and unless the author gives up his ex-

clusive right to make copies—stripping away the author's exclusive right to make and further distribute copies of its own work.

*Plaintiff RPM Management Inc.'s Reply to Defendants' Memorandum Opposing Award of Statutory Damages,* at 5. Plaintiff's argument, however, is not only flawed but unpersuasive. First, it must be noted, not every general publication carries with it an abandonment of all rights in the copyright.[4]

Moreover, a copyright holder in even an unpublished and unregistered work retains the right to be made whole by injunctive relief, compensatory damages and profits from the infringer. Such a copyright holder is foreclosed only from seeking the special, enhanced remedies of statutory damages and attorneys fees. In any event, the copyright holder in a work of limited interest, such as that involved in this case, can enjoy "full copyright protection," *id.,* including the opportunity to seek statutory damages and attorneys fees, merely by complying with the registration requirements of the 1976 Act— the precise result envisioned by Congress in promulgating the Act.

At the time of the infringement by the defendants, the copyright holder, *i.e.,* the architect, had neither generally published the plans nor registered those plans. Under these circumstances, plaintiff, the assignee of the architect, is now foreclosed—not from all relief—but merely from the enhanced remedies of statutory damages and attorney's fees.

WHEREUPON the Court HOLDS that plaintiff is not entitled to either statutory damages or attorneys fees under 17 U.S.C. §§ 504 and 505. The Clerk shall enter FINAL JUDGMENT in this case consistent with the jury verdicts.

---

4. For example, a license can not only meet the criteria for publication under 17 U.S.C. § 101 but also preserve in the copyright holder rights accorded by 17 U.S.C. § 106.